IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

Case No. 16-5122

CALEB SALMON

    Plaintiff/Appellant,

vs.

NUTRA PHARMA CORP

    Defendant/Appellee.

---

On Appeal from the United States District Court
for the Northern District of Oklahoma
The Honorable Judge Claire V. Eagan
Civil Action No. 14-CV-00265-CVE-TLW

---

**APPELLANT'S REPLY BRIEF**

---

Caleb M. Salmon
SALMON LAW FIRM PLLC
8301 E. 51st Street, Ste. 228
Tulsa, OK 74145
T: 918-608-1856


JANUARY 24, 2017

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................4

II. ARGUMENTS & AUTHORITIES...............................................................6

  A. Plaintiff was not required to file a supplemental notice of appeal because no new issues were raised by the district court's adoption of Plaintiff's Notice of Dismissal with Prejudice. ...............................................................6

  B. The District Court Should Have Considered Doc. No. 101-13 and Doc. No. 41-4 Because They Make the Connection Between Steve Gewecke and NPC. .7

  C. The District Court's Requirement That a Telemarketer Overtly Reveal Itself in a Telemarketing Message to Establish Liability Creates a Moral Hazard Inconsistent with the Intent of the TCPA. ...............................................8

  D. NPC's *Ad Hominem* Attacks Against Plaintiff Are Improper. ....................8

III. CONCLUSION ................................................................................9

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(B) ............................10

CERTIFICATE OF COMPLIANCE WITH 10th Cir. R. 25.5 ...............................11

CERTIFICATE OF DIGITAL SUBMISSION .....................................................12

CERTIFICATE OF SERVICE ...........................................................................13

# TABLE OF AUTHORITIES

**Cases**

EEOC v. Walmart Stores, Inc., 187 F.3d 1241 (10th Cir. 1999)................................6

Lewis v. B.F. Goodrich Co., 850 F.2d 641, 645 (10th Cir. 1988)............................7

**Regulations**

47 C.F.R. §64.1200(a)(1) .........................................................................................8

Plaintiff-Appellant Caleb Salmon, a *pro-se* attorney[1] representing himself in this appeal, submits the following Reply Brief:

## I.     INTRODUCTION

Suppose by way of analogy a plaintiff was rear-ended by an unmarked truck. The truck driver gives the plaintiff his name and drives away. The plaintiff researches the driver on the internet and finds that ACME trucking company has named him driver of the month last month and has posted the driver's picture on its website. The plaintiff then brings suit against the driver and ACME trucking company based on that information. ACME trucking company then moves for sanctions against the plaintiff for lacking sufficient evidence to connect the driver to ACME, claiming that the driver could have been driving a truck for a different company on the date of the wreck.

Like the example plaintiff, Plaintiff received certain illegal voicemail messages from unknown persons or entities. Like the example plaintiff, Plaintiff performed research and discovered that Steve Gewecke was the owner of the advertised domain names, and that he managed a large telemarketing operation on behalf of NPC with NPC's enthusiastic knowledge and consent. Plaintiff discovered that this telemarketing campaign was active during the time he received the illegal voicemail messages and brought suit against Gewecke and NPC. NPC

---

[1] Plaintiff filed this case when he was a law student in May 2014. He has since graduated law school and entered private practice handling personal injury, employment and family law cases. He is admitted to the Oklahoma bar, the Northern District of Oklahoma, the Western District of Oklahoma, and this Court.

then moved for sanctions, apparently upon the belief that Plaintiff should have assumed Steve Gewecke was working for himself or someone else rather than NPC, despite the clear evidence that Gewecke was running a large-scale telemarketing operation for NPC.

Sanctions would not be appropriate in either case, unless ACME trucking or NPC produced some additional exculpatory evidence that was unreasonably disregarded. NPC did not offer any exculpatory evidence such as a contract defining the relationship between Gewecke and NPC, or a telemarketing call log for the dates in question, or anything else that might have served to put Plaintiff on notice that there was no connection between Gewecke and NPC. Instead, NPC simply glossed over its public statements regarding the relationship between Gewecke and NPC and the telemarketing campaign and demanded that the court sanction Plaintiff for trying to "shake them down" for a quick settlement.[2]

Many cases turn on one or two crucial documents, and this case is no different. Without Doc. No. 101-13 and Doc. No. 41-4, Plaintiff's suit would certainly have been unreasonable. They establish the connection between Gewecke and NPC's telemarketing activity.

---

[2] The truth is that Plaintiff never asked NPC for money and no settlement discussions ever took place between Plaintiff and NPC. Plaintiff actually believed NPC was probably insolvent because its stock was worthless. Prior to filing the instant suit and tracing the culpable parties, Plaintiff received many telemarketing phone calls. Plaintiff now receives very few.

## II. ARGUMENTS & AUTHORITIES

### A. Plaintiff was not required to file a supplemental notice of appeal because no new issues were raised by the district court's adoption of Plaintiff's Notice of Dismissal with Prejudice.

NPC cites <u>EEOC v. Walmart Stores, Inc.</u>, for the proposition that a supplemental notice of appeal is required when a subsequent order is issued. *Response Brief*, pg. 5. However, unlike <u>EEOC v. Walmart Stores, Inc.</u>, the dismissal with prejudice of all defendants did not affect NPC because the district court had already dismissed the claims against NPC and Plaintiff did not appeal the dismissal. The subsequent order at issue in <u>EEOC v. Walmart Stores, Inc.</u> was the attorney fee award, which was a substantive issue on appeal. The <u>EEOC v. Walmart Stores, Inc.</u> court heard the issues raised by Walmart in its first notice of appeal from the original final order. It did not hear the attorney fee issue because no supplemental notice was filed to add that issue and give notice to the appellee.

In this case, the district court's subsequent adoption of Plaintiff's Notice of Dismissal on September 12, 2016 raised no new issues and Plaintiff has not attempted to introduce any new issues beyond the original Notice. Contrary to NPC's uncited conclusion[3] that there is no cure for an early Notice of Appeal, this court has held "'when a district court has adjudicated all remaining outstanding claims before this appellate court acts to dismiss the appeal,' then Fed. R. App. P.

---

[3] NPC claims that Plaintiff did not cite legal authority for his position that his Notice of Appeal could be cured. It is NPC who raised the issue in its *Response Brief*, and Plaintiff addresses it here.

4(a)(2) operates to ripen a prematurely filed notice of appeal and thereby save the appeal." <u>EEOC v. Walmart Stores, Inc.</u>, 187 F.3d 1241 (10th Cir. 1999). This case is the same case NPC relies upon for its opposite conclusion.

> In the situation like that before us, in which the other claims were effectively dismissed after the notice of appeal was filed, we believe Fed. R. App. P. 4(a)(2) permits the interpretation that the notice of appeal, filed prematurely, ripens and saves the appeal (citations omitted)…
> …Thus, when a district court has adjudicated all remaining outstanding claims before this appellate court acts to dismiss the appeal, we will consider the appeal on its merits rather than dismiss for lack of jurisdiction, whether or not a party in the meantime has obtained a Rule 54(b) certification.

<u>Lewis v. B.F. Goodrich Co</u>., 850 F.2d 641, 645 (10th Cir. 1988). Accordingly, Appellant's appeal is ripe for review on the merits.

**B. The District Court Should Have Considered Doc. No. 101-13 and Doc. No. 41-4 Because They Make the Connection Between Steve Gewecke and NPC.**

The exhibits discussed by the district court were not the critical documents that connected Gewecke (NPC/MyNyloxin's marketing president to whom Plaintiff traced the illegal phone messages) to NPC's telemarketing campaign and established NPC's knowledge and consent to the telemarketing campaign. These documents were the critical documents Plaintiff relied upon when he brought suit. Without considering these documents, the district court came to the conclusion that there was no "connection between the person who allegedly called him and [MyNyloxin]." (Aplt. App. 147). Plaintiff traced the telemarketing messages to

7

Steve Gewecke[4], marketing president for NPC, whose CEO boasted to its shareholders that NPC's telemarketing campaign would place 70,000 calls per day. (Aplt. App. 113). Those documents established the connection.

### C. The District Court's Requirement That a Telemarketer Overtly Reveal Itself in a Telemarketing Message to Establish Liability Creates a Moral Hazard Inconsistent with the Intent of the TCPA.

The district court's strongest criticism of Plaintiff was that his suit was unreasonable because the messages did not overtly mention NPC, and NPC complains of the same in its Response. (Aplt. App. 147). However, it is the sender of the message that is liable regardless of the content of the message. 47 C.F.R. §64.1200(a)(1). Such an additional requirement would encourage telemarketers to engage in more deceptive advertising by allowing them to escape liability, while punishing telemarketers who offer more disclosure. This is not the purpose or intent of the TCPA.

### D. NPC's *Ad Hominem* Attacks Against Plaintiff Are Improper.

In its response brief, as in the court below, NPC has avoided all discussion of its massive telemarketing campaign headed by Steve Gewecke. Instead it has resorted to spontaneous personal attacks against Plaintiff without any citation to the factual record that would support such attacks. This is simply to deflect from

---

[4] Plaintiff used a domain name search to trace the domains advertised in the cellphone voicemail messages to Steve Gewecke. It is not contested that the messages came from Steve Gewecke.

the fact that NPC was conducting a highly illegal telemarketing operation through Steve Gewecke and was caught by Plaintiff.

### III.    CONCLUSION

A sanction against an attorney is a severe and punitive measure that leaves a lasting effect on an attorney's reputation and can make him or her unemployable. Plaintiff relied heavily on the information contained in Doc. No. 101-13 and Doc. No. 41-4 (NPC's 10-Q) connecting NPC directly to MyNyloxin and Gewecke's telemarketing activities on its behalf, without which Plaintiff would not have pressed his claim. (Aplt. App. 59-60, 113). The quasi-punitive nature of sanctions weigh in favor of ensuring that Plaintiff's evidence is thoroughly considered prior to sanctions being imposed for failing to perform a reasonable investigation.

Based on the foregoing, Plaintiff respectfully requests that this Court reverse the district court's order granting sanctions against the Plaintiff-appellant, and remand the case to district court for further proceedings.

s/Caleb M. Salmon<br>
Caleb M. Salmon<br>
8301 E. 51st Street<br>
Suite 228<br>
Tulsa, OK  74145<br>
Telephone:  319-230-6334<br>
salmonlegis@gmail.com

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(B)

1.      In accordance with Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, counsel certifies that, according to Microsoft® Word, this brief contains 1948 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

# CERTIFICATE OF COMPLIANCE WITH 10th Cir. R. 25.5

In accordance with 10th Cir. R. 25.5 and Fed. R. App. P. 25(a)(5), the undersigned certifies that all privacy and redaction requirements have been made.

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that a copy of the foregoing Opening Brief was submitted in Digital Form via the Court's ECF system, is an exact copy of the written copy filed with the Clerk, and has been scanned for viruses with the most recent version of a commercial virus scanning program and, according to the program, is free of viruses.

s/ *Caleb M. Salmon*
Caleb M. Salmon

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Opening Brief was filed through the Court's CM/ECF system this 24th day of January, 2017, which provides notice to the following:

| | |
|---|---|
| Thomas M. Askew<br>taskew@riggsabney.com<br>*Attorney/Local Counsel for Nutra Pharma Corp* | David Herrold<br>dherrold@dsda.com<br>Steward Campbell<br>scampbell@dsda.com<br>*Attorneys for Defendant/Appellant CRST Expedited, Inc.* |
| Daniel DeSouza<br>ddesouza@desouzalaw.com<br>*Attorney for Nutra Pharma Corp (to be admitted)* | |

                                            s/ *Caleb M. Salmon*
                                            Caleb M. Salmon